No. 91-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

KATHLEEN HUGHES,

      Claimant and Appellant,

-vs-

DEPARTMENT OF LABOR AND
INDUSTRY/STATE COMPENSATION
MUTUAL INSURANCE FUND,

      Defendants and Respondents.

APPEAL FROM:   Workers' Compensation Court,
                The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Richard J. Pyfer, Small, Hatch, Doubek & Pyfer,
            Helena, Montana

      For Respondents:

            Leo S. Ward, Browning, Kaleczyc, Berry & Hoven,
            Helena, Montana

FILED

Filed:  JUN 3 0 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  April 23, 1992

Decided:  June 30, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The Montana Worker's Compensation Court (WCC) upheld an order by the Montana Department of Labor and Industry (Department) which denied claimant, Kathleen Hughes (Ms. Hughes), recovery for medical care and wage loss benefits under Montana's Occupational Disease Act §§ 39-72-101 et seq., MCA. Ms. Hughes appeals. We affirm.

The issues raised by the claimant are restated as follows:

1. Did the WCC correctly determine that Ms. Hughes' medical condition was not proximately caused by her employment?

2. Did the WCC correctly reject claimant's contention that the Department's findings of fact were clearly erroneous?

Ms. Hughes suffers from a severe form of atopic dermatitis. The record includes medical reports from several specialists who have evaluated and treated Ms. Hughes for this condition from 1983 to the present, including internists, dermatologists and the dermatology departments at Mayo Clinic in 1988, the University of Oregon in 1987 and the Virginia Mason Clinic in 1986.

In deposition testimony, Ms. Hughes' treating dermatologist stated that he treated Ms. Hughes for her dermatitis from October 1983 to November 1989. In 1983, during this examination, Ms. Hughes indicated that she was suffering from a "flare-up" in her skin condition which had begun in September 1983. The doctor stated that her condition was aggravated by changes in temperature, dust and air flow. He also testified that when he examined the claimant in 1989, she was totally disabled due to her illness.

2

Finally, he testified that Ms. Hughes was able to minimize her disease through aggressive care and by remaining inside her home in a controlled environment.

Ms. Hughes testified she began working as an investigator for the Montana Department of Labor and Industry in October 1983, and began traveling for the Department in February or March 1984. Ms. Hughes stated that she suffered from localized incidents of dermatitis prior to her employment as an investigator, and that she began having serious problems with her skin in 1986. Ms. Hughes stated she suffered a severe "flare-up" of the disease in 1986 after conducting an audit at a talc mine. She describes her condition as getting progressively worse after that time culminating in dermatitis coupled with staph infection which covered approximately ninety percent of her body.

In April 1988, the atopic dermatitis rendered her unable to work. At that time she began treatment with her current treating physician, Harry S. Etter, M.D. Dr. Etter hospitalized the claimant and referred her to the Mayo Clinic for evaluation and aggressive treatment.

In a 1989 report submitted as evidence, Dr. Etter writes that Ms. Hughes has a twenty year history of severe atopic dermatitis which had significantly worsened since 1986. Dr. Etter testified that Ms. Hughes remains totally disabled by this condition because of the aggressive treatment schedule required to control the disease. He also testified that environmental conditions such as

3

temperature changes, dust and wind aggravated her medical condition. Finally, Dr. Etter testified that prior severe outbreaks of dermatitis did not increase Ms. Hughes' susceptibility to outbreaks currently or in the future.

Ms. Hughes submitted a claim for benefits under Montana's Occupational Disease Act. The insurer did not accept liability under the Act. Thus, pursuant to § 39-72-602(2)(a), MCA, the Department directed Ms. Hughes to a member of the medical panel for examination. Lance Hinther, M.D., a board certified dermatologist, examined the claimant. On May 9, 1990, Dr. Hinther issued a report consistent with the analysis of Ms. Hughes' treating physicians. The report stated:

> Atopic dermatitis is a disease that is intrinsic to the patient and not caused by her occupation. It is possible that environmental conditions such as fluctuations in temperature and humidity can significantly aggravate the degree and involvement of the skin condition.
> *   *   *   *   *   *   *   *   *
> Although atopic dermatitis is aggravated by the patient's job exposures, it is an condition that would be present even without her prior work history.
> *   *   *   *   *   *   *   *   *
> In summary, Kathleen Hughes has atopic dermatitis, a skin condition which is not work caused but is occupation aggravated. . .

Neither party requested a second medical examination.

On November 14, 1990, both parties presented their arguments to the Department's hearings examiner. On April 19, 1991, the Department issued an order denying Ms. Hughes' claim for occupational disease benefits. This order was reviewed and affirmed by the WCC on September 3, 1991. The WCC found the

4

Department correctly applied the statute on proximate cause. It further found the Department's findings were supported by substantial evidence in the record. Ms. Hughes appeals from this WCC ruling.

I

Did the WCC correctly determine that Ms. Hughes' medical condition was not proximately caused by her employment?

Ms. Hughes claims that although she suffered from dermatitis prior to working as an investigator for the Labor Department, the unusual travel requirements of the job aggravated her medical condition to the point of disability.

Section 39-72-102(10), MCA defines occupational disease as "harm, damage or death . . . arising out of or contracted in the course and scope of employment . . . ." Section 39-72-408, MCA, defines proximate cause under Montana's Occupational Disease Act. It states in part that occupational diseases arise out of the employment only if: "(4) the disease does not come from a hazard to which workmen would have been equally exposed outside of the employment; and (5) the disease is incidental to the character of the business and not independent of the relation of employer and employee."

Here, Ms. Hughes contends her medical condition was aggravated by environmental factors incidental to her employment. Those environmental factors include extensive travel in heated or air conditioned vehicles which exposed the claimant to temperature

5

fluctuations, air flow, dust and wind resulting in aggravation of her medical condition.

The State Compensation Mutual Insurance Fund (State Fund) contends that Ms. Hughes' employment did not proximately cause her medical condition under § 39-72-408, MCA. We agree that Ms. Hughes cannot satisfy the proximate cause standards.

In this case, the medical reports support the WCC's findings. First, the claimant's condition is intrinsic to her and not caused by her occupation. Further, the environmental factors aggravating her condition are not indigenous to her employment. Rather temperature fluctuations, air flow, wind and dust are common to everyone. Finally, there is no evidence in the record which connects her prior outbreaks during employment with the outbreaks she currently suffers. In deposition testimony Dr. Etter stated that her prior outbreaks of dermatitis did not make Ms. Hughes more susceptible to future outbreaks. We affirm the WCC's conclusion that Ms. Hughes' illness does not arise out of the course and scope of her employment and is not an occupational disease.

Finally, Ms. Hughes contends she is entitled to recovery under the Act's aggravation statute, § 39-72-706, MCA, which states in part:

> If an occupational disease is aggravated by any other disease or infirmity not itself compensable or if disability or death from any other cause not itself compensable is aggravated . . . by an occupational disease, the compensation payable under this chapter must be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disabiity or death as

6

such occupational disease as a causative factor bears to all the causes of such disability or death.

This section limits the insurer's liability to the proportion of the disability caused by an occupational disease. It requires either an occupational disease aggravated by a non-compensable illness or injury or a non-compensable injury or illness which is aggravated by an occupational disease. In this case, the WCC determined that the claimant is not suffering from an occupational disease. Rather, the claimant has an intrinsic non-compensable disease which is aggravated by environmental factors not specific to the claimant's former occupation.

We conclude that § 39-72-706, MCA, does not create a cause of action for an aggravation of a pre-existing condition unless the pre-existing condition is an occupational disease or the aggravation itself is an occupational disease. Accordingly, § 39-72-706, MCA, does not apply in this instance.

We hold that the WCC correctly determined that Ms. Hughes' medical condition was not proximately caused by her employment.

II

Did the WCC correctly reject claimant's contention that the Department's findings of fact were clearly erroneous?

The WCC upheld the hearings examiner's findings of fact. In reviewing the findings of the Department of Labor and Industry, § 39-72-612(2), MCA, states in part that the WCC may overrule the Department's determination if the determination is: "clearly erroneous in view of the reliable, probative, and substantial

7

evidence on the whole record. . . ."  Here the WCC found the Department's determination was supported by substantial evidence in the record.  We agree that the record supports the Department's findings.  Further, the WCC used the proper standard of review.

We hold that the WCC properly rejected claimant's contention that the Department's findings of fact were clearly erroneous.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8

June 30, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Richard J. Pyfer
SMALL, HATCH, DOUBEK & PYFER
Livery Square, 39 Neill Ave.
Helena, MT 59601

Leo S. Ward
BROWNING, KALECZYC, BERRY & HOVEN
P.O. Box 1697
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy